IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. _____

EMC Insurance Companies, an Iowa corporation,

Plaintiff,

v.

Mid-Continent Casualty Company, an Oklahoma corporation

Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

The Plaintiff, EMC Insurance Companies ("EMC"), by and through its attorneys, John D. Mereness and Stephen D. Gurr of Holme Roberts & Owen, LLP, for its Complaint against the Defendant, Mid-Continent Casualty Company ("Mid-Continent"), states and alleges as follows:

### SUMMARY OF THE COMPLAINT

EMC is the commercial general liability insurer for its insureds, Hans Nielsen Inc. ("HNI") and Nanna Nielsen Smith ("Smith"). EMC provided HNI and Smith with a defense and indemnification by way of settlement proceeds paid by EMC to defend and settle claims asserted in an underlying construction defect lawsuit against HNI and Smith filed in the District Court for the County of Denver, State of Colorado, Case No. 2008CV335. ("Underlying Litigation"). Mid-Continent also insured HNI *via* an additional insured endorsement, and although

representing repeatedly that it owed a duty of defense to HNI, Mid-Continent failed to provide a defense to HNI or Smith, failed to pay any of HNI or Smith's defense fees and/or defense costs, and failed to contribute any settlement proceeds on their behalf. As a result, EMC has paid more than its appropriate share of the costs to defend and indemnify HNI and Smith in the Underlying Litigation and is entitled to reimbursement from Mid-Continent.

EMC seeks recovery from Mid-Continent under the theories of equitable subrogation and/or equitable contribution, unjust enrichment, estoppel, and indemnification. EMC also seeks a declaration that Mid-Continent owed a defense to Smith, that Mid-Continent's coverage owed to HNI and Smith is primary with EMC's coverage being excess, and that Mid-Continent owed indemnity to HNI and Smith for the Underlying Litigation.

## THE PARTIES

1. Plaintiff EMC is an Iowa corporation with its principal place of business in Iowa, and it is authorized to issue insurance policies in the state of Colorado.

2. Defendant Mid-continent is an Oklahoma corporation with its principal place of business located at 1437 S. Boulder, Suite 200, Tulsa, Oklahoma, 74119, and it is authorized to issue insurance policies in the state of Colorado.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Complaint and these parties based upon 28 U.S.C. §1332(a)(1) and (c)(1). The Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs of suit.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because the duties of defense and indemnification arose, and should have been performed, in Colorado. The

Underlying Action was brought in Colorado. Additionally venue is proper in Colorado under 28 U.S.C. §1391(a)(3) because the Defendant is subject to personal jurisdiction in the District of Colorado.

## FACTUAL ALLEGATIONS

### The EMC And Mid-Continent Policies and Tenders

5. EMC issued HNI a commercial general liability policy numbered 1D2-11-79 ("EMC Policy"), with a policy term of November 28, 2002 to November 28, 2003, which provided general liability coverage according to its terms.[1] There are no additional insured endorsements on the EMC Policy.

6. Mid-Continent issued a commercial general liability policy numbered 04-GL-000098681 to N.J. Orr Construction Company ("Orr Construction") with effective dates of August 15, 2002 to January 1, 2004 ("Mid-Continent Policy").[2]

7. The Mid-Continent Policy contains two additional insured endorsements providing coverage to HNI and Bear Valley Park Condominiums, LLC ("BVPC") as additional insureds pursuant to the respective endorsement terms and the terms of the Mid-Continent Policy.

8. Relative to the additional insured endorsements, Orr Construction's construction contract required it, at Addendum Two, Art. 11.3.1 to include BVPC and HNI as additional insureds on the Mid-Continent Policy.

---

[1] The EMC Policy is attached and fully incorporated as Exhibit A.

[2] The Mid-Continent Policy is attached and fully incorporated as Exhibit B.

3

9. The Orr Construction contract is an "insured contract" as that term is defined in the Mid-Continent Policy.

10. On August 31, 2007, HNI, BVPC, and Smith were served with a statutory notice of construction defects alleged to exist at the disputed project, which HNI, BVPC, and Smith then tendered to both EMC and Mid-Continent seeking defense and indemnification.

11. On October 26, 2007, Mid-Continent, in writing, denied any defense obligation to HNI or BVPC due to lack of information and indicated that it would continue its investigation. This was despite the fact that Mid-Continent was provided with the statutory notice as well as Orr Construction's contract prior to its denial letter.

12. On December 12, 2007, Mid-Continent, in writing, stated the following:

> Additionally, in the absence of any filed litigation, there is no way of knowing whether or not there would be coverage or a duty to defend your clients until such time as the pleadings are received and reviewed.

13. On January 11, 2008, the Complaint for the Underlying Litigation was filed, styled as Bear Valley Park Condominium Association, Inc. v. BVPC, HNI, Smith, Orr Construction, and Nathaniel Orr in Denver District Court, Case No. 2008CV335.[3]

14. The Complaint for the Underlying Litigation was tendered to Mid-Continent on January 24, 2008, along with a request on behalf of Smith and HNI to obtain a defense and indemnification from Mid-Continent.

---

[3] The Complaint for the Underlying Litigation is attached and fully incorporated as Exhibit C.

15. EMC undertook a defense for HNI and Smith for the Underlying Litigation, and appointed defense counsel to represent HNI and Smith, along with BVPC due to its interrelatedness to HNI and Smith, in the Underlying Litigation.

16. Despite repeated written demands, Mid-Continent failed to provide its coverage position to HNI or Smith until approximately August 18, 2008, when it verbally retracted its prior denials, and represented it would provide a defense to HNI and BVPC, although Mid-Continent refused a defense obligation to Smith.

### The Underlying Litigation

17. The Complaint alleges the presence of construction defects causing resultant property damage and loss of use of property within a common ownership interest community known as Bear Valley Park. The Plaintiff in the Underlying Litigation is the HOA-owner of the Bear Valley Park common elements.

18. Specifically, the Underlying Litigation alleges the following facts material to EMC's claims against Mid-Continent:

    a. Smith was an officer, director, employee and/or agent of HNI (Ex. C, para. 5).

    b. Smith was a principal, manager, employee and/or agent of BVPC (Ex. C, para.8).

    c. Smith and HNI developed, improved, constructed, marketed and sold ownership interests in the project and Smith directly participated in the negligence of HNI. (Ex. C, para. 5).

    d. BVPC was the vendor for the project and in 2003 was the made the declarant for the common ownership interest association; BVPC was responsible for the project's development and improvement, and the project's maintenance and repair. (Ex. C, para. 7).

e. Smith and HNI controlled BVPC, (Ex. C, para. 10 ), and they were all the alter-egos of each other, and were in a joint venture with each other (Ex. C, para. 30).

f. The general contractor for the project was Orr Construction (Ex. C, para. 11).

g. Orr Construction's work, and the work of its subcontractors, was supervised, approved, inspected, and directed by HNI, Smith, and BVPC, which are jointly and severally liable for each other and jointly and severally liable for the defective work and damage caused by the tortious conduct of the subcontractors and Orr Construction. (Ex. C, para. 29).

h. Orr Construction was responsible for the design, development and construction of the project and delegated parts of the design and/or construction to various subcontractors, which was directed, inspected and approved by Orr Construction (Ex. C, para. 32).

i. Orr Construction is jointly and severally liable for the tortious acts of the subcontractors and Orr Construction is vicariously liable for the tortious acts of the subcontractors that caused the damages (Ex. C, para. 33).

j. The defects for which Orr Construction, HNI, Smith and BVPC are liable caused efflorescence, algae growth, cracking, water staining, moisture infiltration, concrete spalling, heaving, settlement, water intrusion damage, and other consequential property damage and failures (Ex. C, para. 42).

k. The defects for which Orr Construction, HNI, Smith, and BVPC are liable caused and continue to cause actual property damages and losses of use over time from the date the areas were put to their intended use, which were unmanifested and unknown until it progressed to the point of reasonable detection. (Ex. C, para. 42).

l. The project was complete in approximately 2003, with the exception of certain remaining punch list items. (Ex. C., para. 2).

m. When some or all of the Defendants' attention was called to the problems described, the Defendants assured Plaintiffs the damages and losses were not caused by substantial defects and would be reasonably and permanently remedied by repairs of all or some of the Defendants. For those repairs that were undertaken, they were

6

       negligently performed and caused resultant and consequential property damage (Ex. C. paras. 43-4, 78).

   n.   The negligence of HNI, Smith, BVPC, and Orr Construction related to the design and construction and repairs for the project has damaged the project, including the project's common elements, causing the Plaintiff resultant and consequential property and other damages in an amount to be proven at trial. (Ex. C, para. 67).

   o.   The damages suffered by Plaintiff include property damage, loss of use of all or portions of the project, past and future repair and mitigation expenses, including damages, injuries or losses paid or incurred by others, which recovery has been assigned to the Plaintiff. (Ex. C, para. 45).

19. For the Underlying Litigation, EMC provided a defense to its insureds HNI and Smith, subject to a reservation of rights, and retained the law firm of Lambdin & Chaney ("L&C Firm") to defend them.

20. *Via* letter dated November 14, 2008, Mid-Continent represented it was providing a defense to BVPC and HNI as additional insureds under the Mid-Continent Policy. Mid-Continent represented it retained the law firm of McConaughy & Sarkissian, PC ("M&S Firm") for that defense obligation owed to BVPC and HNI.

21. Later, on May, 19, 2009, a meeting was held with Smith, L&C Firm, M&S Firm, EMC, Mid-Continent, and the personal counsel for Smith, HNI and BVPC to address the roles of the defense arrangements in the Underlying Litigation.

22. From that meeting, the personal counsel for HNI, Smith, and BVPC confirmed Smith is the manager of BVPC, the president of HNI, and that Smith exercises management control over both BVPC and HNI.

23. From that meeting, Mid-Continent agreed it would provide a defense to BVPC and HNI, and EMC agreed it would provide a defense to HNI and Smith.

24. From that meeting, the defense counsel appointment for the insured was agreed to be as follows:

> M&S Firm represents BVPC and HNI
>
> L&C Firm represents HNI and Smith

25. From that meeting, it was agreed, without waiving any rights as to each other, the primary defense representation responsibilities would as follows:

> M&S Firm primarily represents BVPC
>
> L&C Firm primarily represents HNI and Smith

26. L&C Firm repeatedly submitted its legal invoices directly to Mid-Continent for Mid-Continent to pay 50% of the legal fees and costs incurred in the defense of HNI and Smith. Mid-Continent denied that it had any obligation to pay such defense fees and costs.

27. M&S Firm failed to provide a defense for HNI and/or Smith.

28. EMC paid defense fees and related costs for the defense of HNI and Smith totaling approximately $800,269. Further, EMC contributed settlement funds in the amount of $411,684 for the benefit of HNI and Smith to be fully released and dismissed in the Underlying Litigation.

29. Mid-Continent paid none of the defense fees or costs EMC incurred to defend HNI and/or Smith.

30. Mid-Continent paid no defense fees or costs to M&S Firm to defend HNI and/or Smith.

31. Mid-Continent paid no settlement funds for the benefit of HNI and/or Smith to have the Underlying Litigation claims fully released against HNI and/or Smith.

32.   Mid-Continent, near the time of settlement negotiations in the Underlying Litigation, filed a Declaratory Judgment Action in the United States District Court of Colorado, Case No. 10-CV-00343-CMA-KLM, seeking a declaration of its rights under the Mid-Continent Policy relative to Orr Construction, HNI, Smith, and BVPC, among others. Mid-Continent thereafter voluntarily dismissed its lawsuit due to the settlement achieved in the Underlying Litigation.

33.   EMC has been damaged by Mid-Continent's representations and failures to provide a defense and indemnification to HNI and/or Smith and/or to pay for same.

34.   EMC has been without fault in fulfilling its defense and indemnity obligations to HNI and Smith.

35.   Mid-Continent is at fault for failing to provide a defense or indemnity to HNI and Smith.

36.   Due to Mid-Continent's conduct, EMC was forced to pay more than its fair share of defense costs and indemnity to HNI and Smith.

37.   Due to Mid-Continent's conduct, EMC has been forced to initiate this litigation and to incur attorney fees and costs to pursue reimbursement and damages from Mid-Continent.

## THE POLICIES

38.   The EMC Policy essentially grants coverage to HNI for "property damage" if the property damage is caused by an "occurrence" and the property damage occurs during the policy period, as those terms are defined, and as otherwise not excluded. (Ex. A, a and b). It also provides coverage to Smith, as Smith is an "executive officer" of the named insured, HNI, and

was sued in her capacity and for her duties performed as an officer of HNI. (Ex. A. Section II, (1)(d)).

39. The EMC Policy is excess over:

> Any other primary insurance available to [HNI] covering liability for damages arising out of the . . . operations for which [HNI] ha[s] been added as an additional insured by attachment of an endorsement.

(Ex. A, Section IV(4)(b)(2)).

40. HNI is an additional insured via endorsement to the Mid-Continent Policy, and that endorsement is silent as to whether the coverage afforded to HNI under the endorsement is primary or excess to other insurance. (Ex. B, AI Endorsement Form No. ML 10 81 (03 01)).

41. The Mid-Continent Policy provides the following within its standard terms:

> This insurance is primary except where b. below applies. [Not Applicable]. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in c. below.

Exhibit B, Section IV(4)(a).

42. The Mid-Continent Policy provides primary coverage to HNI.

43. The Mid-Continent Policy also provides primary coverage to Smith under Section II, providing coverage in her capacity as the manager of BVPC, and as an officer of HNI. (Exhibit B, Section II (1)(c and d). That policy also insures Smith, as it describes an insured to also include, "any person or organization while acting as your real estate manager." (Exhibit C, Section II(2)(b)).

44. The Mid-Continent Policy, *via* its additional insured endorsement to HNI provides that if Orr Construction was required to add HNI as an additional insured pursuant to an "insured contract," which it was, then the Mid-Continent Policy definition of an insured:

> Is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to [Orr Construction's] performance of ongoing operations for [HNI].

(Exhibit B, AI Endorsement Form ML 10 81 (03 01)).

### FIRST CLAIM FOR RELIEF
### (Equitable Subrogation)

45. EMC hereby incorporates paragraphs 1 through 44 of its Complaint as if set forth herein.

46. EMC fully provided a defense to HNI and Smith for which Mid-Continent refused to pay or contribute in the Underlying Litigation.

47. EMC's funded a settlement contribution for the settlement of claims asserted against HNI and Smith in the Underlying Litigation for which Mid-Continent refused to pay or contribute on behalf of HNI and/or Smith.

48. The Mid-Continent Policy provided primary insurance coverage to HNI and Smith.

49. The EMC Policy provided excess insurance coverage to HNI and Smith.

50. By funding the defense of HNI and Smith and by funding settlement proceeds on their behalf, EMC involuntarily paid debts that were primarily owed by Mid-Continent. EMC paid the entire portion of Mid-Continent's debts.

51. EMC made the payment of Mid-Continent's debts to protect its interests and that of its insureds in the Underlying Litigation.

52. EMC has incurred defense costs and indemnity payments, that in equity and good conscience, and pursuant to the terms of the parties' respective policies of insurance, should have been assumed and paid by Mid-Continent. EMC has further incurred attorney fees and costs to preserve and pursue these rights against Mid-Continent.

53. EMC is entitled to equitable subrogation against Mid-Continent under common law and equitable principles as a result of the defense and settlement for the Underlying Litigation, and Mid-Continent's refusal to provide an active defense and to contribute any settlement proceeds for HNI and/or Smith.

54. No injustice will result to any persons by the allowance of this action in equity; however, Mid-Continent will be unjustly enriched if allowed to keep the benefits it received as a result of EMC discharging duties and expending sums owed by Mid-Continent.

55. As a result of Mid-Continent's failure to defend HNI and/or Smith and failure to contribute to the settlement reached on their behalf, EMC is entitled to equitable subrogation against Mid-Continent in the full amount of the defense fees and costs incurred by EMC, and in the full amount of EMC's settlement contribution, along with EMC's reasonable attorney fees and costs expended to preserve and pursue this action, along with prejudgment and post-judgment interest on all amounts, and costs of court.

**ALTERNATIVE SECOND CLAIM FOR RELIEF**
**(Equitable Contribution)**

56. EMC hereby incorporates paragraphs 1 through 44 of its Complaint as if set forth herein.

57. Alternatively, and without waiving its First Claim for Relief, EMC is entitled to equitable contribution from Mid-Continent.

58. EMC fully provided a defense to HNI and Smith for which Mid-Continent refused to pay or contribute in the Underlying Litigation.

59. EMC funded a settlement contribution for the settlement of claims asserted against HNI and Smith in the Underlying Litigation for which Mid-Continent refused to pay or contribute on behalf of HNI and/or Smith.

60. By funding the defense of HNI and Smith and by funding settlement proceeds on their behalf, EMC involuntarily paid debts that were owed by Mid-Continent. EMC paid the entire portion of Mid-Continent's debts.

61. EMC made the payment of Mid-Continent's debts to protect its interests and that of its insureds in the Underlying Litigation.

62. EMC has incurred defense costs and indemnity payments, that in equity and good conscience, and pursuant to the terms of the parties' respective policies of insurance, should have been assumed and paid by Mid-Continent.

63. EMC is entitled to equitable contribution against Mid-Continent under common law and equitable principles as a result of the defense and settlement for the Underlying Litigation, and Mid-Continent's refusal to contribute to an active defense and contribute any settlement proceeds for HNI and/or Smith caused damage to EMC.

64. No injustice will result to any persons by the allowance of this action in equity; however, Mid-Continent will be unjustly enriched if allowed to keep the benefits it received as a result of EMC discharging duties and expending sums owed by Mid-Continent.

65.  As a result of Mid-Continent's failure to defend HNI and Smith and failure to contribute to the settlement reached on their behalf, EMC is entitled to equitable contribution against Mid-Continent in a proportionate amount of the defense fees and costs incurred by EMC, and in a proportionate amount of EMC's settlement contribution, along with EMC's reasonable attorney fees and costs expended to preserve and pursue this action, along with prejudgment and post-judgment interest on all amounts, and costs of court.

### THIRD CLAIM FOR RELIEF
### (Declaratory Judgment Action -
### Defense owed to Smith, Mid-Continent Policy Coverage Primary)

66.  EMC hereby incorporates paragraphs 1 through 65 of its Complaint as if set forth herein.

67.  EMC's rights, obligations and other legal relations are affected by the Mid-Continent Policy, and a current dispute exists, which is ripe for judicial determination buy way of a declaratory judgment. All conditions precedent to the maintenance of this action have been performed, satisfied, excused, or waived.

68.  Pursuant to F.R.C.P. 57 and 28 U.S.C. §2201, declaratory and further ancillary relief thereon are appropriate and proper for EMC's sought declaration and adjudication from this Court that:

  a.  Mid-Continent owed a defense to HNI and/or Smith for the Underlying Litigation under the Mid-Continent Policy;

  b.  Mid-Continent's coverage to HNI and/or Smith is primary and EMC's coverage to HNI and/or Smith is excess; and

  c.  Mid-Continent owed a duty to indemnify HNI and/or Smith with respect to their liability for property damage and loss of use damages incurred at the project made the basis of the Underlying Litigation.

      d.     For these declared rights, EMC has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

69. EMC hereby incorporates paragraphs 1 through 68 of its Complaint as if set forth herein.

70. EMC fulfilled obligations and made payments for the benefit of HNI and Smith, which were obligations and payments that Mid-Continent owed and should have paid, but did not.

71. Mid-Continent conferred a benefit by EMC's payment of defense fees and costs and indemnity payments paid for the benefit of Mid-Continent's insureds.

72. Mid-Continent appreciated and realized the benefits provided by EMC.

73. Mid-Continent accepted EMC's benefits by allowing EMC to fully fund the defense and settlement payments on behalf of HNI and Smith, while Mid-Continent reaped the benefit by not paying for any defense or indemnity obligations Mid-Continent owed to its own insureds.

74. EMC has been damaged by Mid-Continent's unjust enrichment in an amount to be proven at trial on the merits.

### FIFTH CLAIM FOR RELIEF
### (Estoppel)

75. EMC hereby incorporates paragraphs 1 through 74 of its Complaint as if set forth herein.

76. Mid-Continent repeatedly represented that it owed a defense obligation to HNI, even though it refused to provide such a defense.

77. The M&S Firm retained by Mid-Continent which Mid-Continent represented would defend HNI failed to actually provide an active defense to HNI.

78. Mid-Continent intended to have EMC believe that Mid-Continent was actually participating in the defense of HNI by repeatedly and expressly representing the M&S Firm was providing a defense for HNI.

79. EMC justifiably relied on Mid-Continent's affirmative representations that it owed a defense to HNI, and EMC submitted its legal bills incurred to defend HNI to Mid-Continent for reimbursement with the expectation those bills would be paid.

80. EMC fulfilled its own defense obligations owed to HNI, and due to Mid-Continent's representations, reasonably believed that Mid-Continent would pay for the defense fees and costs incurred to actively defend HNI.

81. EMC suffered injury as a result of Mid-Continent's inequitable representations and conduct, as EMC was left to pay for 100% of the active defense of HNI and settlement of its liabilities, while Mid-Continent failed to pay a dime for the defense of HNI and failed to contribute any settlement proceeds for HNI, although representing that it was providing a defense.

82. To prevent manifest injustice, equitable estoppel applies in EMC's favor to estop Mid-Continent from denying that it owed or was responsible to pay for an active defense to HNI in the Underlying Litigation and from denying that Mid-Continent had no obligation to participate in settlement negotiations or contribute to the settlement for the benefit of HNI.

## SIXTH CLAIM FOR RELIEF
### (Indemnity)

83. EMC hereby incorporates paragraphs 1 through 82 of its Complaint as if set forth herein.

84. EMC faithfully, and without fault, fulfilled its defense and indemnity obligations to HNI and Smith.

85. Mid-Continent negligently failed to fulfill its defense and indemnity obligations to HNI and Smith.

86. EMC tendered to Mid-Continent to undertake the defense and indemnity of HNI and Smith, which was refused by Mid-Continent.

87. EMC's settlement for the benefit of HNI and Smith was in good faith and was reasonable.

88. EMC suffered damages as a result of Mid-Continent's negligence, as EMC was forced to fully fund a defense and settlement for the benefit of HNI and Smith, in light of Mid-Continent's refusal to provide any defense or indemnity, in an amount to be proven at trial on the merits.

WHEREFORE, EMC prays for a speedy hearing in accordance with Fed. R. Civ. Pro. 57 and a declaratory judgment pursuant to the authority set forth in 28 U.S.C. sections 2201 and 2202 adjudging and determining the rights and obligations of the parties with respect to the defense and settlement of claims in the Underlying Action, the priority of same, and otherwise, for judgment against Defendant for the amounts spent by Plaintiff for the defense and settlement thereof in the Underlying Litigation, for the full recovery of its reasonable attorney's fees and costs to pursue this action, and for further awards of prejudgment interest, costs of suit, post-

judgment interest, and for an award of all other and further relief as the Court may deem appropriate and proper.

Dated this 13th day of December, 2010.

/s/ John D. Mereness
John D. Mereness
Stephen D. Gurr
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Email: john.mereness@hro.com
Email: steve.gurr@hro.com
Phone: 303-861-7000
Fax: 303-866-8144
*ATTORNEYS FOR PLAINTIFF, EMC INSURANCE COMPANIES*

Address of Plaintiff:
717 Mulberry
Des Moines, Iowa 50309