IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-03005-LTB-KLM

EMC INSURANCE COMPANIES, an Iowa corporation,

    Plaintiff,

v.

MID-CONTINENT CASUALTY COMPANY, an Oklahoma corporation,

    Defendant.

_____

### ORDER
_____

### ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

This matter is before the Court on Plaintiff's oral **Motion to Compel Responses to Requests for Production Six through Eleven** and **Motion to Compel Deposition of Ivan Sarkissian** (collectively, the "Motions"). In compliance with the Court's procedures for resolving discovery disputes, the parties contacted the Court to set a hearing on the Motions. The Court held a telephonic discovery hearing on the Motions on September 27, 2012. Appearing telephonically at the hearing were John D. Mereness, counsel for Plaintiff, Lawrence M. Brooks, counsel for Defendant, and Dennis Polk, counsel for Interested Party McConaughy & Sarkissian, P.C. At the end of the hearing, the Court took the matter under advisement and stated it would issue a written order. For the reasons below, the Court **GRANTS** the Motions.

### I.   BACKGROUND[1]

This is an action involving two insurance companies in which the first, Plaintiff,

---

[1] The Court's summary of the facts in this section is drawn largely from the Background section of the summary judgment Order [#51] issued on August 2, 2012.

alleges that the second, Defendant, failed to adequately defend Hans Nielsen, Inc. ("HNI") and improperly refused to defend Nanna Nielsen Smith ("Smith") in an underlying construction and design defect case. In the underlying litigation, the homeowner's association of a condominium development sued HNI, Smith, BVPC, LLC ("BVPC") and N.J. Orr Construction Company ("Orr"), among others. HNI and BVPC were the developers of the condominium project. Smith was an officer of HNI and served as BVPC's manager during the pertinent time periods. Orr was the project's general contractor.

HNI was the named insured in a commercial general liability policy issued by Plaintiff. Orr was the named insured in a commercial general liability policy issued by Defendant. Pursuant to two endorsements, BVPC and HNI were additional insureds under the policy issued by Defendant.

When the homeowner's association initiated the underlying litigation in January 2008, Plaintiff provided a defense for HNI and Smith, and hired the law firm of Lambdin & Chaney to defend them. Defendant agreed to defend HNI and BVPC under a reservation of rights and hired the law firm of McConaughy and Sarkissian, PC, to defend them. Defendant refused to provide a defense for Smith. The underlying litigation settled prior to trial.

Plaintiff alleges in this action, *inter alia,* that it paid the entire portion of the settlement that resolved the underlying litigation as to HNI and Smith. Plaintiff further alleges that it paid all of their defense costs. Plaintiff contends that the two liability policies together required Defendant to defend HNI and Smith and to contribute to the costs of their defense and settlement. Plaintiff therefore seeks indemnification from Defendant for these costs.

On August 2, 2012, Judge Babcock issued an Order [#51] resolving the parties' motions for summary judgment in which he ruled that Defendant had no duty to defend or indemnify Smith in the underlying litigation, nor did Defendant have a duty to indemnify HNI. Judge Babcock further ruled that Defendant had a duty to defend HNI in the underlying litigation and that genuine issues of material fact exist regarding whether Defendant breached that duty. Accordingly, Judge Babcock determined that because Defendant had no duty to indemnify HNI or Smith, Defendant is not responsible for any of the settlement costs Plaintiff paid, nor is Defendant responsible for any of Smith's defense costs paid by Plaintiff. Defendant may by responsible, however, for the costs Plaintiff paid to defend HNI, depending on whether Defendant breached its duty to defend HNI. With that background, the Court turns to Plaintiff's Motions.

## II. ANALYSIS

### A. Discovery Requests[2]

Plaintiff's Request for Production ("RFP") No. Six seeks "communications, reports, status reports, updates, analyses [and] summaries" received by Defendant from McConaughy & Sarkissian ("M&S") that address matters pertaining to HNI in the underlying litigation. *Plaintiff's Discovery Requests* at 8. RFP No. Seven requests every document

---

[2] In preparation for the telephonic discovery hearing on September 27, 2012, counsel for Plaintiff e-mailed four documents to the Court: (1) Plaintiff's First Set of Written Discovery Requests to Defendant Mid-Continent Casualty Company ("Plaintiff's Discovery Requests"); (2) Defendant's Response to Plaintiff's First Set of Written Discovery Requests to Defendant Mid-Continent Casualty Company ("Defendant's Discovery Responses"); (3) Defendant Mid-Continent Casualty Company's Amended Privilege Log; and (4) a letter dated May 15, 2012 from Plaintiff's counsel to Defendant's counsel. Additionally, following the hearing, Plaintiff's counsel e-mailed to the Court a copy of the May 21, 2009 letter containing the common interest agreement ("Common Interest Agreement"). Defendant's counsel was copied on both e-mails.

3

in Defendant's possession that was addressed from M&S to Smith and/or HNI on which Defendant was copied. *Id.* RFP No. Eight seeks every communication from Defendant to M&S regarding HNI's defense, including the cost, in the underlying litigation. *Id.* RFP No. Nine requests every budget submitted by M&S to Defendant for HNI's defense in the underlying litigation. *Id.* RFP No. Ten requests all the legal fee invoices submitted by M&S to Defendant for its defense of HNI in the underlying litigation. *Id.* RFP No. Eleven seeks all communications in Defendant's possession addressing Defendant's authorized settlement offers for the benefit of HNI. *Id.*

For each of these requests, Defendant responded that the documents sought are "attorney-client privileged and work-product protected." *Defendant's Discovery Responses* at 24. Defendant asserts that the privilege is held by HNI and absent a waiver from HNI, Defendant cannot produce the documents because they were received subject to those privileges and protections. *Id.* The Court notes that with regard to RFP No. Eight, Defendant, without waiving its objection, produced a letter. *Id.* In addition, in response to RFP No. Eleven, Defendant produced some "non-privileged, non-work-product protected documents" related to the communications requested. *Id.* at 25.

As presented at the hearing, Plaintiff also seeks to compel the deposition of Ivan Sarkissian, an attorney at M&S. Defendant again argues that the attorney-client privilege and work-product protection would significantly limit Mr. Sarkissian's deposition testimony. M&S contends that it is impossible to decide in the abstract whether Mr. Sarkissian can be deposed and that application of the attorney-client privilege and work-product protection would need to be decided on a question-by-question basis.

   **B.**   **Legal Standards**

### 1.     Attorney Client Privilege

In diversity jurisdiction cases such as this, state law governs issues of privilege. *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998) (stating that "state law supplies the rule of decision on privilege in diversity cases"). In Colorado, the attorney-client privilege "is established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo.App. 2009). The privilege applies only to statements made under circumstances in which there is a reasonable expectation that the statements will be treated as confidential. *Id.* (citing *Wesp v. Everson,* 33 P.3d 191, 197 (Colo. 2001)).

In Colorado insurance cases, "an attorney retained by the insurance carrier owes a duty to the insured only; there is no attorney-client relationship between an insurance carrier and the attorney it hires to represent the insured. *Essex Insurance Company v. Tyler*, 309 F.Supp.2d 1270, 1272 (D.Colo. 2004). Colorado Formal Ethics Opinion 91 (January 16, 1993), on which the Court in *Essex* relied, states:

> A lawyer retained by a liability insurance carrier to defend a claim against the company's insured must represent the insured with undivided fidelity. For purposes of this opinion, that retention does not create an attorney-client relationship between the lawyer and the carrier. . . .
>
> [T]he insured is the client to whom the lawyer's duty of loyalty is owed.

Similarly, Colorado Formal Ethics Opinion 107 (September 18, 1999) provides in pertinent part:

> The Ethics Committee recognizes that the insurer has a legitimate interest in obtaining information needed to monitor the costs of defense. But the

attorney may not allow the interests of the insurer to interfere with the interests of the insured. Accordingly, the attorney must ensure that any communication with the insurer or the third party auditor does not breach the duty of confidentiality owed to the insured.

### 2.     Work Product Protection

As stated in Fed. R. Civ. P. 26(b)(3)(B), the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" are protected from disclosure to opposing parties in discovery. However, such work product may be discovered if it is relevant to any party's claim or defense and if that party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

The work product doctrine is "broader than and distinct from the attorney-client privilege." *In re Foster*, 188 F.3d 1259, 1272 (10th Cir. 1999). Attorneys' mental impressions are broadly protected in order to further "society's interest in protecting the adversary system by shielding litigants' work-product from their opponents, and thus freeing lawyers to create such materials without fear of discovery and exploitation." *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). "The protection provided by the work product doctrine is not absolute, and it may be waived." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (citation omitted).

### 3.     Common Interest Doctrine

"In Colorado, the joint defense (or common interest) doctrine is an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to third parties." *The Marianist Province of the United States, Inc. v. Century*

*Indemnity Company*, No. 08-cv-01760-WYD-MEH, 2010 WL 3938355, at *2 (D.Colo. Oct. 5, 2010) (unreported decision) (citing *Black v. Southwestern Water Conservation Dist.*, 74 P.3d 462, 469 (Colo.App. 2003). The doctrine includes "pre-existing confidential communications and documents that are shared during a common enterprise." *Id.* "The privilege applies only to communications given in confidence and intended and reasonably believed to be part of an on-going and joint effort to set up a common legal strategy." *Black*, 74 P.3d at 469 (citations omitted).

However, when parties who previously shared a common interest become adverse in subsequent litigation, one cannot invoke the attorney-client privilege against the other to preclude the other from seeking information related to the underlying matter. *Roberts Aircraft Co. v. Kern*, No. 96-N-1214, 1997 WL 524894, at *3 (D.Colo. March 20, 1997) (unpublished decision); *Matter of Quantum Chemical/Lummus Crest*, No. 90 C 778, 1992 WL 71782, at *3-4 (N.D.Ill. April 1, 1992). The rationale behind the subsequent litigation exception is that pursuant to their common interest, the parties had no expectation of confidentiality regarding disclosure of information to each other in the underlying matter. *Id.*

    **C.**    **Application**

        **1.**    **Requests for Production Nos. Six Through Ten**

The Court finds that the documents sought by Plaintiff in these five requests for production are not protected by the attorney-client privilege. As Judge Babcock determined, Defendant had a duty to defend HNI. Defendant hired M&S for that purpose, among others. Pursuant to Ethics Opinion 91, the attorney-client relationship was between HNI and M&S. There was no attorney-client relationship between Defendant and M&S.

Consequently, the documents sent by M&S to Defendant in the underlying litigation are not protected by the attorney-client privilege.

In its response to the document requests, Defendant argued that the attorney-client privilege is held by HNI and that Defendant received documents from M&S subject to that privilege. *Defendant's Discovery Responses* at 24. Thus, Defendant claims it cannot disclose these documents absent a waiver of the attorney-client privilege from HNI. However, pursuant to Ethics Opinion 107, in order for M&S to have disclosed the documents to Defendant, HNI must have already explicitly waived the privilege, or it has now done so implicitly. *See Wesp*, 33 P.3d 191, 198 ("[I]f a communication to which the privilege has previously attached is subsequently disclosed to a third party, then the protection afforded by the privilege is impliedly waived.") (citations omitted). If HNI waived the privilege to allow disclosure of the documents by its attorneys to Defendant, Defendant may not attempt to enforce the privilege here. Once waived, the privilege as to those communications is gone. *See People in Interest of E.H.*, 837 P.2d 284, 292 (Colo.App. 1992). The Court therefore finds no basis to conclude that the documents Defendant received from M&S related to HNI were subject to HNI's attorney-client privilege, and this argument is rejected as a basis to deny Plaintiff's motion to compel responses to its requests for production.

In the alternative, the Court finds that the requested documents are not covered by the attorney-client privilege because they were not "confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *Tucker*, 232 P.3d at 198. There was no reasonable expectation that the documents sent from M&S to Defendant would remain confidential

8

because there was no attorney-client relationship between these entities. In fact, M&S had a duty to HNI to ensure that its communications with Defendant did not breach the duty of confidentiality owed to HNI. *See* Ethics Opinion 107 at ¶ (I)(B)(2). Absent an attorney-client relationship between M&S and Defendant, the Court finds that the documents sent by M&S to Defendant in the underlying litigation are not protected from disclosure in this action by the attorney-client privilege.

Moreover, even if the Court agreed with Defendant that it received the documents from M&S subject to HNI's attorney-client privilege, the Common Interest Agreement among the parties in the underlying litigation establishes that there was no expectation of confidentiality regarding disclosure of such information among the parties to the agreement. Plaintiff was a party to the Common Interest Agreement. Among the terms of the agreement was that M&S and the other law firm would "prepare and submit joint litigation status reports" to be distributed to the insurers. *Common Interest Agreement* at 4. Thus, by its own terms, the agreement provided for the exchange of information between the law firms representing the insureds and the insurance carriers. Because there was no expectation of confidentiality at the time M&S provided documents to Defendant in the underlying litigation, Defendant may not now assert that those documents are subject to HNI's attorney-client privilege.

Defendant argued at the hearing that the common interest was between the three insureds in the underlying litigation, not between Plaintiff and Defendant. Defendant claimed, therefore, that the common interest doctrine is inapplicable. Plaintiff and Defendant, however, were both parties to the agreement that clearly contemplated the free exchange of information among all the parties to the agreement. Because the information

9

from M&S to Defendant was supplied in that environment, without an expectation of confidentiality as to the parties to the agreement, the Court finds that the rationale behind the subsequent litigation exception to the common interest doctrine applies here. Defendant may not, therefore, rely on the attorney-client privilege to preclude Plaintiff from now obtaining information pertaining to the underlying matter. For these reasons, the Court finds that the documents sought by Plaintiff in Requests for Production Nos. Six through Ten are not protected by the attorney-client privilege.

Similarly, the Court finds that because the Common Interest Agreement in the underlying litigation also covered "work product communications between defense counsel and the insurers," the documents sought are not covered by the work product protection. Without addressing whether the requested documents constitute the "mental impressions, conclusions, opinions, or legal theories" of M&S attorneys, the Court finds that because the documents sent by M&S to Defendant in the underlying litigation were sent with no expectation of confidentiality among the parties to the agreement, the documents are not protected. Having determined that the documents sought by Plaintiff in Requests for Production Nos. Six through Ten are not protected by the attorney-client privilege or as attorney work-product, the motion to compel as to these requests is granted.

### 2. Request for Production No. Eleven

In this request, Plaintiff seeks all communications in Defendant's possession regarding Defendant's authorized settlement offers for the benefit of HNI. In its response, Defendant objected "to the extent that it calls for the production of materials that are protected by the attorney-client privilege, the attorney work-product protection, or other relevant privilege." For the same reasons set forth above, the Court finds that documents

responsive to this request are not protected by the attorney-client privilege or as attorney work-product.

At the hearing on the Motions, Defendant argued that because Judge Babcock determined it had no duty to indemnify HNI, the documents sought are not relevant to the remaining claims. The Court disagrees. As Judge Babcock also determined, Defendant had a duty to defend HNI. In discussing the requirements for discharging that duty, Judge Babcock cited *Signature Development Companies v. Royal Insurance Company of America*, 230 F.3d 1215 (10th Cir. 2000). In *Signature*, the Court held that the defendant breached its duty to defend by failing, among other things, to respond to settlement overtures and to fully cooperate in settlement negotiations. *Id.* at 1220. Thus, the duty to defend extends to participating in settlement negotiations. *See id.* The Court therefore finds that the documents sought in Request for Production No. Eleven are relevant to Defendant's duty to defend HNI in the underlying litigation. The motion to compel as to this request is granted.

### 3. Deposition of Ivan Sarkissian

Lastly, Plaintiff seeks an order compelling the deposition of Ivan Sarkissian, an attorney at M&S. To the extent that Plaintiff's questions to Mr. Sarkissian are limited to matters between M&S and Defendant, including any documents produced as a result of the Court's above rulings, the Court finds that answers to such questions are not protected by the attorney-client privilege or as attorney work product for the same reasons set forth above. Beyond that, Defendant may, as it sees fit, assert a privilege in response to any questions that seek protected information. If there is a dispute as to whether the asserted privilege applies, the parties can seek Court intervention. Thus, Plaintiff's motion to compel

Mr. Sarkissian's deposition is granted, subject to the foregoing conditions.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the information sought by Plaintiff in Requests for Production Nos. Six through Eleven is not protected by the attorney-client privilege or as attorney work-product. Accordingly,

IT IS HEREBY **ORDERED** that the Motions are **GRANTED**.

IT IS FURTHER **ORDERED** that **on or before October 24, 2012**, Defendant shall produce to Plaintiff documents responsive to Requests for Production Nos. Six through Eleven.

IT IS FURTHER **ORDERED** that Defendant shall promptly make available Attorney Ivan Sarkissian for a deposition, subject to the conditions set forth above.

Dated: October 3, 2012

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge